**Todd KRUEGER, Plaintiff–Appellant,**

v.

**CITY OF ALGOMA, WISCONSIN, Police Department, City of Algoma, Marvin De-Quaine, individually and as the Chief of Police of the City of Algoma Police Department, et al., Defendants–Appellees.**

No. 92–2742.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 26, 1993.

Decided July 28, 1993.

Thomas O. Schultz (submitted), Green Bay, WI, for plaintiff-appellant.

Raymond J. Pollen, Mark A. McClendon, Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, Timothy J. Strattner, Amy J. Ringenoldus, Schellinger & Doyle, Brookfield, WI, Gregg T. Heidenreich, Milwaukee, WI, for defendants-appellees.

Before BAUER, Chief Judge, and FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

Todd Krueger attempted suicide the day after a City of Algoma police officer arrested him for disorderly conduct. He sued the City of Algoma and several police officers, claiming they violated his civil rights by arresting him and that the alleged violations somehow caused his suicide attempt. The district court granted summary judgment and we affirm.

## I.  Facts

In 1988, the City of Algoma faced an epidemic of underage drinking. Todd Krueger, then a senior at the local high school, had been cited at least five times. On two of those occasions he required medical treatment. On December 20, 1988, Krueger attended a high school basketball game. As he was leaving the parking lot after the game he hung out of the passenger window of the car he was in and yelled to Officer Todd Haltaufderheid, who was directing traffic, "[w]hy don't you direct that G– D– traffic?" Officer Haltaufderheid got into his police car and tracked down the vehicle in which Krueger was a passenger. As he approached the vehicle, he noticed Krueger in the passenger seat attempting to put on a seat belt. Officer Haltaufderheid instructed Krueger to step out of the car, and he refused. He noticed that Krueger's eyes were red and that he emitted a strong odor of alcohol. Officer Haltaufderheid then reached into the car, grabbed Krueger by the arm, and assisted him out. The car in which Krueger was riding then sped away, and Officer Haltaufderheid questioned Krueger. Officer Haltaufderheid believed he had probable cause to cite Krueger for underage drinking and disorderly conduct. However, he issued only an underage drinking citation and took Krueger to the Algoma police station.

While at the police station, Krueger told Officer Haltaufderheid that "If I get this ticket, you'll be reading about me in the obituaries tomorrow." When Krueger's mother came to pick him up at the police station, Officer Haltaufderheid told her of the suicide threat, and he recommended that she seek treatment for her son. Officer Haltaufderheid then released Krueger into his mother's custody. She did not act on Officer Haltaufderheid's suggestion. Instead, she and her son went home.

The next morning, Krueger took his father's shotgun and left his house before his parents awoke. When the parents later realized he was missing, Krueger's mother told his father of the events of the previous night. Krueger's father then went to the police station to report that his son and his shotgun were missing from the family home. He suggested to Chief Marvin DeQuaine that no police officer should have contact with his son until he (the father) had been called to calm him down. At Chief DeQuaine's request, Officer Arnold Zahn typed a "Missing Person" report which noted Krueger's suicide comment.

Later that morning, Officer Zahn saw a car speeding and disobeying traffic signals in the city of Algoma. Officer Zahn gave chase; he did not know at the time that Krueger was driving the car. When Krueger noticed

that Officer Zahn had activated his siren and flashing lights, he "accelerated hard" in an attempt to flee. Krueger continued to flee at high speed until he reached the Bruemerville Dam. Once there, he got out of his car brandishing the shotgun he had taken from his house. He pointed the gun at Officer Zahn, who ducked behind his car. Officer Zahn warned Krueger to put down the gun. He then heard a shot. When Officer Zahn looked around the car which was shielding him, he saw Krueger laying on the ground bleeding from the chest. Krueger had attempted suicide. He survived but with major injuries.

The City of Algoma prosecuted Krueger for the underage drinking citation. In an apparent mistake, the citation had been issued for "procuring or attempting to procure alcoholic beverages" instead of underage drinking. The county judge dismissed the case on August 24, 1989 noting that the real charge—underage consumption of alcohol—was not on the face of the citation. The judge also considered Officer Haltaufderheid's allegations that Krueger treated him with disrespect leading up to the arrest. The judge admonished Krueger for the disrespect, but found that Krueger's behavior did not provide an independent cause for the arrest.

On December 1, 1989, Krueger filed his complaint in this case, alleging that the police officers and the City of Algoma violated his constitutional rights by harassing and arresting him, and that the violations caused his suicide attempt. The district court granted summary judgment in favor of the defendants, concluding that Krueger failed to support his claimed constitutional violations. Krueger makes three arguments on appeal: 1) that Officer Haltaufderheid illegally arrested him on December 20, 1988; 2) that Officer Zahn engaged him in a wrongful pursuit in contravention of an alleged order from Chief DeQuaine; and 3) that Chief DeQuaine failed to train and supervise his officers properly.

## II. Analysis

The district court began its order granting summary judgment by noting that "[t]here comes a point when human beings must be required to accept responsibility for their voluntary actions rather than being permitted to impose legal liability or moral blame on other individuals or on society in general." It is tragic when an 18–year–old attempts suicide. But who is responsible for this tragedy? Krueger points to three actions by City of Algoma police officers which he claims violated his civil rights and caused his suicide attempt. None of these actions, however, were so outside the scope of a reasonable exercise of police authority to amount to a constitutional violation.

First, Krueger contends that there is a question of fact whether his arrest by Officer Haltaufderheid the night before the suicide attempt was an unlawful arrest. The county judge who considered the citation issued to Krueger found that he was arrested without cause in violation of section 968.07, Wisconsin Statutes. But this conclusion is not dispositive in assessing the constitutionality of the police officers' actions. The Supreme Court instructs that a district court should assess the constitutionality of an alleged unlawful arrest by determining whether any reasonable police officer could have found probable cause to arrest. *Hunter v. Bryant,* —— U.S. ——, —— – ——, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991). If so, the police officer is shielded from liability by the principle of qualified immunity. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (police officers are entitled to qualified immunity for allegations of unlawful arrest if reasonable police officers could disagree whether there was probable cause to make the arrest).

The district court found that because Krueger stuck his head out of the window and yelled "[w]hy don't you direct that G– D– traffic?" there was a sufficient basis "to find that Officer Haltaufderheid was qualifiedly immune based on his reasonable belief that probable cause existed for the ordinance violation of provoking a disturbance or disrupting good order." The district court proceeds to note: "The subsequent acts flowing from the stop also support Officer Haltaufderheid's qualified immunity. Todd Krueger, himself, admits that he had been drinking

and that he was underage. His blood alcohol level tested at .08 percent." We agree with the district court. As a matter of law, a police officer could have reasonably believed he had probable cause to arrest under such circumstances.

■ Next, Krueger claims that Officer Zahn illegally arrested him at the Bruemerville Dam. He posits that Officer Zahn should not have arrested him after observing him speeding and disobeying traffic signals. Again, we must determine whether any reasonable police officer could have concluded that there was probable cause for arrest under such circumstances. Obviously, police officers have probable cause to arrest in light of such flagrant traffic violations. The propriety of the arrest is confirmed by the fact that Krueger pointed a gun at Officer Zahn after the stop. Because of his behavior, Krueger was a danger not only to himself but the community. Officer Zahn certainly had constitutional discretion to arrest.

Krueger's theory that the arrest was improper is partly based on his belief that because his father advised the police that his son should not be approached until the father had a chance to talk with him, the police were required to follow this advice. Police officers, however, do not commit constitutional violations by failing to follow the tactical advice of non-police officers. Police officers have discretion to arrest even in contravention of such advice. Officer Zahn had good reasons to arrest Krueger.

■ Finally, Krueger argues that Chief DeQuaine violated his constitutional rights by failing to properly train and supervise his officers. Although his brief does not clearly state his legal theory on this point, apparently Krueger believes that Chief DeQuaine should have instructed the Algoma police officers not to arrest him on the occasions when they reasonably believed he was violating the law. Of course, no police chief is under a constitutional obligation to give such an order. Somehow tied to this theory is Krueger's complaint that the police department violated his rights by releasing him into his mother's custody after he had made a suicide threat. Apparently, Krueger believes that Chief DeQuaine had a responsibility to establish a departmental policy against such releases. The district court noted the inconsistency of Krueger's position in this regard: on the one hand he claims the officers violated his constitutional rights by arresting him, and on the other hand he claims that they did so by releasing him. In any event, Officer Haltaufderheid's release of Krueger into his mother's custody was patently reasonable under the circumstances, and did not come close to breaching his constitutional rights.

### III. Conclusion

Because reasonable police officers could have found probable cause to arrest Krueger, the individual officers are qualifiedly immune from suit. Because Krueger fails to demonstrate that the individual police officers did anything wrong, he also fails to demonstrate that Chief DeQuaine violated the Constitution by failing to train or supervise the officers in his command. Finally, Krueger has not presented any evidence that the City of Algoma engaged in unconstitutional practices or policies subjecting it up to liability. Therefore, the judgment of the district court is

**AFFIRMED.**